**THE AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, a corporation, Appellant,**

**v.**

**Otho Holland WILLIAMS, doing business as Otho Williams Buick, Appellee.**

**No. 1599.**

Municipal Court of Appeals
District of Columbia.

Argued Jan. 31, 1955.

Decided March 1, 1955.

1. Brown v. Rudberg, 84 U.S.App.D.C. 221, 171 F.2d 831; Grant v. Williams, D.C.Mun. App., 94 A.2d 475.

Saul M. Schwartzbach, Washington, D. C., for appellant.

William H. Clarke, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

An automobile belonging to a man named Vetter was badly damaged by fire, after being repaired by a garage keeper. Vetter's subrogee, appellant insurance company; sued the garage. The question is whether the trial court ruled properly in directing a verdict for defendant.

Vetter's car was a 1953 Buick which was then a few months old, had run about 11,000 miles and was in excellent condition. Preparing for a trip to Florida, he took it to the shop of defendant, a Buick dealer, for a "major motor tune up." After driving away from the shop he noticed a very strong odor of gasoline. The next morning, desiring to allow a warm up period, he started the motor and left the car. A moment later flames appeared beneath the hood and by the time firemen arrived the motor had been completely destroyed. He returned the automobile to defendant's garage and noticed that the float plug from the carburetor was lying on the bottom panel below the carburetor.

An automobile mechanic who was familiar with Buick cars testified that a major tune up consisted of cleaning the carburetor and carburetor filter, adjusting the carburetor, cleaning the spark plugs, tightening the exhaust, removing and replacing the head gasket, and checking the wiring system. A hypothetical question was put to the witness and later excluded, but before the ruling was made the trial judge directed a series of questions to the witness dealing with the matter of causation. The witness outlined several ways in which a fire could have started, including some which could have resulted from negligence on the part of defendant, but he could not say what caused the fire.

Plaintiff also called as a witness the mechanic who had done the work on the automobile. Like the preceding witness he said that the motor had been so badly

burned that the starting place of the fire could not be determined. He said that he did nothing to the carburetor except make two adjustments.

■ We must apply the familiar and accepted rule that on a motion for instructed verdict the court must accept as true all evidence which tends to support plaintiff's case and must adopt every inference which might reasonably be deduced therefrom. We think the evidence was such that a jury could reasonably have found that the automobile would not have caught fire without some fault on the part of defendant. The relative newness of the car, the perfect condition of the motor before the repair job, the complete absence of any gasoline odor, the nature of the work done by defendant, the gasoline odor manifesting itself immediately thereafter, the fire breaking out the very next morning, the carburetor plug being found out of place, all combined to make out a prima facie case.

■ It is true that there was no direct testimony as to what caused the fire, but in our opinion such is not always required. Courts will take judicial notice that gasoline vapors are highly inflammable and even explosive, and that this characteristic combined with the spark from the electrical system provides the force which propels an automobile. Courts will also take judicial notice that automobile motors in a proper state of repair do not burst into flame. This conforms logically to the view expressed in similar cases that circumstantial evidence is acceptable to prove the origin and cause of gasoline fires. Austerberry v. United States, 6 Cir., 169 F.2d 583, 592. There the court applied the rule that negligence in connection with gasoline fires may be based on circumstantial evidence alone, without the supporting prop of expert testimony, which the court called "an unsatisfactory character of evidence."

In an earlier Federal case Judge Parker, writing for the Fourth Circuit, said: "The origin of gasoline fires must in most cases be established by circumstantial evidence;

and the probative effect of such evidence ought not be disregarded because the ingenuity of counsel may suggest a number of ways in which such fires might have originated." The New Berne, 4 Cir., 80 F.2d 244, 247. The opinion cited a number of cases in which the courts had not hesitated to fix responsibility for gasoline fires and explosions, even when the evidence as to cause was not of a strong or persuasive nature.

■ The trial judge said he could not submit the case to the jury because it would involve speculation and guesswork. We agree that cases are not to be submitted for jury consideration when there is no evidentiary foundation on which to conduct intelligent deliberation and reach a reliable verdict. But on the basis of the features we have already named we think this is one of the special types of cases in which, as the Supreme Court has said, "a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference." Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916.

In this case a jury would not be merely conjecturing; it would be sifting the factual situation, including permissible inferences, in order to answer the question as to whether the fire resulted from some act of negligence on the part of the repair shop.

■ We commend to the trial court, as we did several years ago in Resnick v. Wolf & Cohen, D.C.Mun.App., 49 A.2d 809, 811, the practice of submitting cases to the jury and reserving determination of questions of law raised by a motion for directed verdict. If that procedure had been followed in this case and the jury found for defendant, their verdict would have eliminated the necessity of the trial court passing on the question of law raised by the motion. It seems worthwhile to repeat what we said in that case:

"On the other hand, if the verdict of the jury were in plaintiff's favor, the

trial court could thereafter rule on the motion and order judgment for the defendants. And then on appeal, if this court disagreed with the trial court, the verdict of the jury could be reinstated without the necessity of a new trial. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. The practice of submitting cases to the jury and reserving determination of questions of law raised on motion for directed verdict, has received strong commendation in this jurisdiction and elsewhere. Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142; Fratta v. Grace Line, Inc., 2 Cir., 139 F.2d 743."

Reversed, with instructions to award a new trial.