**John L. KEARNEY and Annie M. Kearney, Appellants,**

v.

**The COMMERCE INVESTMENT COMPANY, Appellee.**

**No. 4870.**

District of Columbia Court of Appeals.

Argued Jan. 6, 1970.

Decided March 6, 1970.

4. *Id.*

5. *See* 3 Barron and Holtzoff, Federal Practice and Procedure § 1216 at 85 (1958).

Glenn A. Mitchell, Washington, D. C., for appellants.

Lyon L. Tyler, Jr., William K. Harvey, Washington, D. C., for appellee.

Before KELLY, FICKLING and KERN, Associate Judges.

FICKLING, Associate Judge.

The Commerce Investment Company (appellee) brought suit against Mr. and Mrs. Kearney (appellants) to recover on a promissory note signed by them. The note was purchased by Commerce from the Washington Aluminum Company, Inc., which had contracted with the Kearneys to make improvements on their home.[1]

The Kearneys demanded a jury trial and asserted the defense of false and fraudulent inducement in signing the note. D.C.Code 1967, § 28:3–305(2) (c).[2] After the jury failed to agree, the trial judge directed a verdict for Commerce.

The Kearneys claim on appeal that it was error to direct a verdict; they argue that the evidence was sufficient to support a finding by a jury that the note was secured from them by misrepresentation, without their knowing or having a reasonable opportunity to know of its character or essential terms.[3] We agree and reverse.

The undisputed testimony of Mr. Kearney was that he had a third grade education and had been employed as a cement mason since 1932. On or about February 20, 1965, a representative of Washington Aluminim, Mr. Fleming, appeared unsolicited at the Kearneys' home. He inquired as to whether the Kearneys needed work done on their house. Mr. Kearney told him that there were repairs and improvements needed, but that he was financially unable to have them made at that time because of his other debts. Mr. Fleming suggested that the work could be done then and paid for later. Mr. Fleming left and returned several days later, at which time Mr. Kearney showed Mr. Fleming the repairs and improvements to be made. Mr. Fleming had Mr. Kearney sign a work contract for $2,500 and told him that he would not have to start payments until 6 months after the work was completed.[4] Mr. Kearney suggested that he obtain a loan on his own but Mr. Fleming said no, that he would arrange for credit. Mr. Kearney signed the application for credit which had been filled in by Mr. Fleming. A blank note separated by a perforation at

1. The Kearneys filed a third party complaint against Washington Aluminum making allegations similar to those raised in defense to Commerce's action. Washington Aluminum went out of business, did not defend, and the Kearneys obtained a default judgment against them.

2. This section of the Uniform Commercial Code provides:
   To the extent that a holder is a holder in due course he takes the instrument free from
   * * * * *
   (2) all defenses of any party to the instrument with whom the holder has not dealt except
   * * * * *
   (c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms. * *

3. There is no contention on appeal that appellee is not a holder in due course.

4. The work contract, which was introduced into evidence, had a clause to the same effect.

the bottom of the application was also signed by Mr. and Mrs. Kearney. Mr. Kearney testified that he thought that the entire document was a credit application. He further testified that he had signed other notes for loans and credit in the past and that he could read the word "note" on the promissory note in issue here.

Mrs. Kearney testified that she had a high school education and was employed as a keypunch operator. Her testimony substantially corroborated that of her husband; she added that there was no conversation about the note and that she thought the whole document was a credit application. She further testified that Mr. Fleming said he could arrange for the payments to begin 6 months after the work was completed and that the work was not completed. She also had been engaged in transactions involving credit and notes.

At the trial the note dated April 1, 1965, for $3,156.12 and signed by appellants, was introduced into evidence. It provided for the first installment to be paid 180 days after its date. This note had been detached from the credit application, which was introduced separately.

■ We have repeatedly held that by moving for a directed verdict the proponent admits, for the purposes of the motion, the truth of the evidence for the opponent, with all reasonable inferences to be derived therefrom.[5] Moreover, "it is clear that even when the evidence is uncontradicted, if it is possible to derive conflicting inferences from it, it is error to direct a verdict. And where the proponent's case is totally dependent upon the credibility of his witnesses, the issue is presumably one for the jury." 5 J. Moore, Federal

Practice § 50.02 [1], at 2319 (2d ed. 1969) (footnotes omitted).

■ Viewing the evidence in light of these rules, we hold that at the very least, the following questions of fact were raised: Were misrepresentations made to the Kearneys concerning the nature and/or essential terms of the document they were asked to sign? Were they induced to sign by those misrepresentations?. Did they, nevertheless, have a reasonable opportunity to obtain knowledge of the document's essential terms? And did they intend to sign a promissory note and a credit application or only a credit application? These questions also, of course, involve the issue of the witnesses' credibility. *See also* Millrose Corp. v. Brent, 106 U.S.App.D.C. 242, 271 F.2d 508 (1959).

Since these issues were for the jury to determine, it was error to direct a verdict.[6]

As this case may have to be retried before a jury, we take this opportunity to suggest that the trial judge refer to the Official Comment to § 28:3–305(2) (c) [7] in formulating his instructions. In substance, he should instruct the jury as to "all relevant factors" to be considered in evaluating the defense alleged here. He should be sure that his instructions make clear to the jury that knowledge or a reasonable opportunity to acquire knowledge of the document's character or essential terms would defeat the Kearneys' defense of fraud. We make these suggestions well aware that the trial judge must frame his instructions based on many variables, and we in no way wish to confine or restrict him in this regard. We offer them only as guidelines.

Reversed with instructions to grant a new trial.

---

5. *E. g.,* Hagan v. Burch, D.C.App., 261 A.2d 236 (decided Jan. 28, 1970); Automobile Ins. Co. of Hartford v. Williams, D.C.Mun.App., 111 A.2d 874 (1955); Vaughn v. Neal, D.C.Mun.App., 60 A.2d 234 (1948).

6. The authorities relied upon by Commerce are inapposite since those cases were tried by a court sitting without a jury.

7. Uniform Commercial Code § 3–305, Comment 7.